The next case on the calendar is Lee et al. v. New Ichiro Sushi, Inc. and Yuhang Wang. There are two related cases on appeal, which we are hearing one by one. We'll hear this case first. We have Ms. Troy on behalf of the appellants. You can proceed when you're ready, Ms. Troy. Good morning. My name is Tiffany Troy, and I represent the appellants. I'm an attorney with Troy Law, PLLC. The district court erred in finding that defendant appellee Yuhang Wang and New Ichiro Sushi was not liable for any Fair Labor Standards Act and New York labor law violations for plaintiff Jianhui Wu and Kai Zhao, who are the appellants today, who each worked at New Ichiro Sushi for a period of time. I have two main points. First, the district court improperly discounted plaintiff appellant's testimony for three reasons. First, because Wu and Zhao's witness credibility were evaluated as a group rather than on an individual basis. Wait a second. That's just not the law. They each testified, right? That is correct, Your Honor. So why wouldn't the judge's evaluation of their individual credibility be entitled to our discretion? Your Honor, in the— This would be a new rule of law where there are a group of plaintiffs testifying and they have a collective action that the credibility of one verifies the credibility of all. There's no such thing as group credibility. That is correct, Your Honor. That is exactly the point. I know that's correct. Which is the problem in the judge's decision because the judge's decision said, although all of G. Lee plaintiffs were under oath in court as to the accuracy and truthfulness of their direct testimony affidavits, it became very apparent at trial that the G. Lee plaintiffs were simply unfamiliar with what was allegedly their own— and they, on several occasions, expressed not knowing what was in their affidavits because what had been in their affidavits was explained to them only in general terms. Your Honor, there is two plaintiffs in this case. There is both Plaintiff Wu and Plaintiff Zhao, and they're both appealing. To the extent that the judge wants to discount the credibility of Plaintiff Wu and discredit his direct testimony, that may be her position, but she improperly imputed the credibility as to Plaintiff Appellant Wu to Plaintiff Zhao as well. Counsel, counsel, your concern, then, is that by treating them as a group and talking about their credibility in the plural, that somehow this was a group finding based upon one of them's lack of credibility. But you could also read it as a shorthand way, perhaps not the best way, of saying that they were all incredible, individually incredible. Yes, Your Honor. I understand, I understand, but that is not the way that the Plaintiff Appellant read the decision. And furthermore, even if we just— Go ahead. I mean, what you're saying is that instead of doing it the way she did, she should have singled them out plaintiff by plaintiff and discussed their credibility independently of each other. But the idea was, as Judge Wesley has pointed out, that they were all incredible because each was incredible because of the discrepancies between the affidavit and the testimony. Your Honor, the discrepancy that the defendant appellees pointed out in the opposition brief is a case of mistaken identity as to another unrelated defendant, Jen Ping Chen, and not as to the appellee that is on the brief today, Ju Han Wu. And even if we discounted the direct testimony of both Wu and Zhao, the documentary evidence is sufficient to show that both individuals are underpaid. Their testimony aligns with the punch cards that were provided by the defendant appellees. And their testimony also showed, and the court below also noted, that both Wu and Zhao's time cards contained more hours than that was paid for. And lastly, both Wu and Zhao's statements that were made at the summary judgment seat were not considered at all despite being available. So that is sort of the gist of the argument with respect to the discounting of the testimony. And our second argument is that the district court improperly found that there is no substantial continuity. Now, our argument is that the court should adopt the imputation of successor liability that can be found on the ---- Let me make sure I understand your argument there. I mean, the district court did utilize the substantial continuity test that you're urging. Yes. Your argument to this Court is simply that there was sufficient evidence of constructive and actual constructive notice. That is correct, Your Honor. But the district court, again, heard the testimony. Mr. Wang testified. She credited his testimony that he was paid properly, that he didn't know. He was told that the other employees had been paid properly by, I guess, when he inquired about that. So how would he have known what the other employees were being paid? Yes, Your Honor. The Juhan Wang is not an outsider, and he testified that he knew something was not right about the way in which he himself was paid because he was an employee at the Ichiro Sushi before he became the owner of new Ichiro Sushi. So there is no question as to the fact that he had actual notice as to the way in which he was paid. And, in fact, he also testified that he sought to change the pay practices at new Ichiro Sushi after he began operating the new Ichiro restaurant. As to the actual idea of the substantial continuity, not only is it a cash-only transfer for which there is no record whatsoever, there is a transfer of all the fixtures and a number of employees, including appellants Dao and Wu, as well as managerial-level employees like the prior owner's wife, Huiying Gao, were specifically retained to stay on to ensure a, quote-unquote, smooth transition. How does that relate to how they were paid just because it was a cash transfer for the sale? What does that say about the employee's payment? There could be a lot of different reasons, good or bad, for doing it that way, but it doesn't necessarily speak to their hours and their pay, right? Your Honor, you're correct. But the fact and the circumstances in which the transfer happened supports the public policy argument towards applying the — one sec — the substantial continuity test and, furthermore, the fact that multiple individuals stayed on in a cash-only transfer to ensure a, quote-unquote, smooth transition, and the fact that the documentary evidence itself shows that these individuals were underpaid makes it pretty clear that, you know, that the court improperly found their substantial continuity. All right. Thank you, Ms. Choi. You have two minutes in rebuttal. We'll now hear from Mr. Yan. Good morning, Your Honor. May I please the Court? My name is David Yan. I represent Defendant and Appellee New Ishiro Tsuji and Jiehan Wen. First of all, I believe that it is within the province of the district court, as a trial of fact, to decide whose testimony is credible. And appellant claimed that district court imputed one of the plaintiff's incredibility to another plaintiff. It is not true because district court properly evaluated each plaintiff. And if appellant found Mr. Hidalgo to be credible, right, found them both not credible because appellant actually challenged district court's credibility determination only to two plaintiffs. One is Jiehan Wu, another Kai Zhao. District court properly evaluated each of these two plaintiffs. Can you address Ms. Choi's argument about she says the punch cards demonstrated independent of their direct testimony that they were underpaid? So can you address that? The punch card actually, Your Honor, that's the way of the operation is the employer give instruction to employees, you have to time in and time out properly. However, employees sometimes they forgot proper timing. They came in earlier, they time in before they start work. When they supposed to time out, after they finish work, they did not time out, did something else. And there's another way to correct the time cards. There's a way of the hours they worked, there's a sheet, a summary sheet for each day, the week, and the employer present these to the employees. During the testimony or the bank trial, the testifying plaintiff acknowledged that it was their signature. They acknowledged that the correction sheet was accurate. And, Your Honor, that's the district court has the province to either credit somebody's testimony or discredit some witness testimony. It is within her province to take part of the testimony as credible, part of the testimony not credible. Well, I think what Judge Bianco is saying is that the correction sheet is a document and the punch cards are documents. And if they could prove their case based on just those documents, then perhaps the district judge should have credited those documents, even though finding the individual testimony incredible. On the other hand, if the punch cards and the correction sheets together reflected a payment scenario, but the claim is that they should have been paid more than that, then that's a different story because that would definitely depend upon their credibility. Can you address—follow me? Yeah, I follow you, Your Honor. The actual payment was consistent with the correction sheet. There was a time sheet in the record talking about the timing. The timing of start of work, timing off, and at the break, because the punch card, the employee told the employee, when you take the break, you have to punch out. But they did not punch out. I see. So your position is that the punch cards overstated the payments? Yes. To some extent. Right. Incorrectly overstated. Right, because the punch card system— But that was all corrected by the correction sheet. Yes. I see. Your Honor, because the punch card system, they just started before the defendant apparently took over the business. There was no such system. After he took over the business, he was instructed by his accountant, saying that he had to implement the punch card to accurately reflect hours the employee worked, and with the correction sheet to reflect the proper these hours. When he first started implementing the punch cards, the employee did not get used to it. They randomly punched in, punched out, did not punch out when they took the break. And when they supposed not to punch in before they started work, they punched in. After a while, when the system became operate properly, when the employee got used to it, the punch card system would get more and more accurate. So that's why, in part, the defendant, they used the timesheets to verify with each individual employees to make sure these hours, what they worked. So during the testimony bench trial, these evidence were presented to the plaintiff. They acknowledged these hours, what they worked, and these were the timesheets. Let me ask you a question about the successor liability issue. You heard Ms. Troy suggested that Mr. Wang, at some point, I guess, during his testimony, said that he realized at some point when he was not, I guess, prior to being a chef, that there was something wrong with his pay. That confused me because the district court found that when he worked, his own pay worked there. His own pay was adequate. He was not aware of any potential labor violations by the restaurant. So do you want to address that? Did he testify that he, that there was something wrong with his pay? Your Honor, I was with the case from the beginning. I cannot really recall. Individual defendant, Chu Heng Wen, ever tested that. He found that there was something wrong about his own pay. And I don't know. Maybe the plaintiff counsel can point to the record. Where is this testimony or evidence to either suggest or imply Mr. Chu Heng Wen ever testified that he found something was wrong? I never recall that. Okay. Your Honor, that's the – another evidence is the district court improperly excluded the defendant's evidence that the bank statement and point of sale record because this is very critical piece of evidence. Well, that relates to the other appeal. We're going to call that case separately. No, also in this one because continuity, if there's a business, they stop renovating business. They cut the tie between two business because there was a continuity. You have many factors. And the plaintiff, they lost in the summary judgment. They lost in the motion for summary judgment because they failed to address each factors of the continuity test. And the business closed on September 14th – September 17th, 2014. Until the end of September 2014, they started on October 3rd, 2014. Then there's a substantial renovations. And the business then is different. The menu was different. The food cuisine was different. The district court correct point out that wasn't a red flag because Zhu Hanwen – actually, he was a chef. Even he worked in the same restaurant. Zhu Hanwen came to the United States as a poor kid. He came here without any money. He worked hard with his wife without taking any sick days, vacations. He saved his money in order to realize his American dream to buy this restaurant. Counsel, Mr. Wang was the chef. The plaintiffs were in the – there was some testimony about what he did or didn't know about them or any conversations or any expressions on their part of being unhappy with the wages. Didn't he testify to the fact that they were in delivery and so, therefore, he didn't have any interaction with them? I believe so. Why? Because Zhu Hanwen, he worked in the chef's desk. He did not really arrange how to assign the delivery work to these plaintiffs. They are in separate operations. He only made the sushi and put in the – whatever, they packed this food. Then the plaintiff took this food for the delivery. He had no – he was not in a position to decide how much this plaintiff would be paid. He was not the person to schedule these plaintiffs how they should work, take their assignments. So, in any sense, he's not in power of these plaintiffs. There's no – even by any test of economic reality, he cannot meet any of these tests as the employer of the plaintiffs. All right. Thank you, Mr. Yang. Thank you, Your Honor. Ms. Troy, you have two minutes in rebuttal. Thank you, Your Honors. First, I want to address the point as to the citation as to this actual notice. And I point your attention to page 6 of the reply brief where we cited to Appendix 558 and 485. 558 and 485? Yes, which shows that the appellee knew there was something not right about this and testified he changed new HRO sushi's pay practices to conform with his accountant and lawyer's advice. In fact, Ju Hong Wong had retained a lawyer from June 2013. So it is clear that he testified that he knew that something was wrong. This isn't just a red flag issue. He actually knew of the red flag. Didn't he testify that the lawyer told him that the former employees were not owed any money and that there were no outstanding obligations? Isn't that what the testimony was? That is part of the testimony, but that's contradicted by appellee's own actions prior to the undertaking of the so-called zero, the so-called cash-only, untraceable purchase of all the fixtures of HRO restaurant by new HRO sushi. Now, as to the argument as to the punch cards, the appellant's— Would it be enough— Sure. In your view, for him to be aware of the fact that—say that they weren't using punch cards, which might be a violation of the state law, would that be enough to then put him on notice that the wages were inadequate? He not only knew that the wages— No, that's a simple question. In your view, would that have been enough to put him on constructive notice that— I believe so, Your Honor. Just let me finish. Sorry. That there might be other potential violations of the labor law? I believe so, Your Honor, yes. All right. But wasn't it the testimony of some of the plaintiffs, their position was that they were working for Mr. Wang as early as 2011, that he was the co-boss, and that's part of where some of their testimony kind of became disengaged from what their affidavits were. Isn't that the case? That is correct. All right. All right, thank you, Ms. Croy. Thank you. We will reserve decision. Thank you. Thank you.